Gkaham, Judge,
delivered the opinion of the court:
There is but one question to be determined by this case, and that is whether the plaintiff’s claim comes within the purview of the identical provision contained in the acts of April 27, 1914, 38 Stat. 355, and March 4, 1915, 38 Stat. 1067, which is as follows:
“That on and after July 1, 1914, the pay of clerks and messengers at headquarters of territorial departments, tactical divisions, brigades, and service schools, who are citizens of the United States, shall be increased $200 each per annum, while serving in the Philippine Islands, such service to be computed from the date of departure from the continental limits of the United States to the date of return thereto.”
The plaintiff, prior to July 1, 1914, was serving as a clerk in the Quartermaster Corps in the capacity of chief clerk of the depot quartermaster’s office at headquarters of the Philippine Department, United States Army, at Manila, P. I. He thereafter continued to serve in the same capacity until January 17, 1917, when he was appointed as a field clerk, Quartermaster Corps.
Shortly after that date he presented a claim to the Auditor for the War Department for an increase of $200 per annum on his regular salary from July 1, 1914, to January 16, 1917, under the provisions of the aforesaid act. The claim was allowed and paid in the sum of $508.89.
. Subsequently, on November 24, 1917, he was appointed a captain in the Quartermaster Corps, Officers’ Reserve Corps, and has since continuously served as an officer of the Reserve Corps on active duty as major under an emergency commission, and since July 1, 1920, as a captain, Quartermaster Corps, Regular Army, in which grade he was serving in the Army at the time of the institution of this suit.
*23 Later, on June 15,1920, the aforesaid sum of $508.89 paid him, as aforesaid, was checked against him as having been erroneously paid, and was subsequently deducted from his pay as captain in the Quartermaster Corps of the Regular Army and has never been repaid to him.
The plaintiff was a native-born citizen of the State of Iowa and, so being, went to the Philippine Islands in October, 1899, as an enlisted man in the United States Volunteers, United States Army, and has remained a citizen thereof.
After his discharge from this service in the Philippine Islands he was, on February 28, 1901, appointed temporary clerk, which appointment was later made permanent, as aforesaid, in the Quartermaster’s Corps, and from May 15, 1914, acted as chief clerk, quartermaster’s office at headquarters in the Philippine Islands, at- Manila, until he accepted the above appointment as field clerk, Quartermaster’s Corps, January 17,1917.
It is plain that the primary and fundamental purpose of the above-quoted acts was to secure as clerks and messengers at the headquarters of territorial departments, tactical divisions, brigades, and service schools of the Army persons who were citizens of the United States, and that this was a wise purpose.
That the plaintiff was a citizen of the United States within the meaning of the act is admitted, and it is also apparent that his previous experience in connection with the work of the Quartermaster’s Department in the Philippines as well as his actual prior service in the Army made him particularly desirable for the service to promote the efficiency of which this act was passed.
As an inducement to citizens of the United States to enter this service $200 extra per annum from the time of departure from until the return to the United States was incorporated in the act.
It was known that a trip to the Philippines and return was expensive and that, as a place of continued residence for any length of time, it was undesirable, particularly for natives of the United States, and, hence, the wisdom of this *24 provision for additional 'salary, not only to meet the expense of travel but as an inducement for continued service in the islands, is apparent. This was the purpose of this provision : “ Such service to be computed from the date of departure from the continental limits of the United States to the date of return thereto.” It was an inducement to residents of the United States to leave it for the service. In the case of the plaintiff his pay commenced when the actual service began.
It is not its purpose to limit the fundamental purpose of the act by confining it to citizens of the United States who should go from the United States to the Philippine Islands— in other words, who were residents of the United States prior to the time of their departure. Such a construction, in view of the purpose of the act, would but limit and obstruct the object it was desired to accomplish.
The mei’e fact that the plaintiff was for the time residing in the Philippine Islands does not exclude him from the benefits of the statute. Statutes of a similar general character and purpose have been given a liberal construction and held to apply to residents of our island possessions where they come within the general class of service provided for. Vulte v. United States, 47 C. Cls. 324. Of' course, in this case the statute would not apply to a resident of the islands who was not a citizen of the United States, as citizenship is required, but it does not follow that it does not apply to a citizen who is a resident.
The plaintiff possessed the qualification of citizenship which it was the purpose of the act to secure for the service and in addition a fitness bom of experience in the service to be performed.
In this view of the case the plaintiff should recover and judgment should be entered in favor of the plaintiff in the sum of $508.89, as claimed in the petition, and it is so ordered.
Hat, Judge; Downey, Judge; and Campbell, Chief Justice, concur.